1

2

3

4

5

6

7

8

9

10

11

12

13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RAY CLARENCE ROGERS,

                          Plaintiff,

        v.

L. REICHARD, *et al.*,

                          Defendants.

Case No. C23-1812-JCC-MLP

ORDER DECLINING TO SERVE
COMPLAINT AND GRANTING LEAVE
TO AMEND

14

## I.        INTRODUCTION

15    This is a civil rights action proceeding under 42 U.S.C. § 1983. Plaintiff Ray Rogers is

16  currently confined at the King County Jail ("the Jail") in Seattle, Washington. Plaintiff has

17  submitted to this Court for filing a civil rights complaint under 42 U.S.C. § 1983 and an

18  application to proceed with this action *in forma pauperis* ("IFP"). (*See* dkt. ## 4, 4-1). Plaintiff's

19  IFP application has been granted by way of a separate Order. The Court has now screened

20  Plaintiff's proposed complaint (dkt. # 4-1) in accordance with 28 U.S.C. § 1915A(a) and has

21  identified deficiencies Plaintiff must correct if he wishes to proceed with this action. The Court

22  therefore declines to direct that Plaintiff's proposed complaint be served but grants him leave to

23  file an amended complaint curing the deficiencies identified below.

ORDER DECLINING TO SERVE COMPLAINT
AND GRANTING LEAVE TO AMEND - 1

## II.    BACKGROUND

Plaintiff sets forth four causes of action in his proposed complaint alleging unconstitutional action and/or inaction by King County and seventeen Jail employees and officials. (Dkt. # 4-1.) The individual Jail employees and officials named as Defendants in Plaintiff's pleading include: Officer L. Reichard; Sergeant Taylor, Jr.; Officer Burke; Commander Troy Bacon; Major Michael Taylor; Director Allen Nance; Officer John Doe; Corrections Program Administrator Gregg Curtis; Officer Lucy; Sergeant K. Williams; Officer Edmonds; Officer Joy; Officer K. Miller; Officer Moen; Property Room Staff B. Medina; Officer Cordoria; and Officer Cole.[1] (*See id.* at 1-2, 4-7.)

Plaintiff's claims are not a model of clarity. However, Plaintiff appears to allege in the first count of his complaint that Defendants Taylor, Jr., Reichard, Burke, Doe, Cordoria, Lucy, Williams, Edmonds, and Moen violated his First and Fourteenth Amendment rights when they acted in concert to punish him without due process of law and when they used shakedowns, *i.e.*, unit searches, in a retaliatory manner. (Dkt. # 4-1 at 9.) Plaintiff asserts in support of this claim that on November 6, 2023, a number of officers entered his housing unit and conducted a retaliatory shakedown. (*See id.* at 12.) Plaintiff appears to attribute the shakedown to an interaction between Defendant Reichard and another inmate, Christopher Longie, that occurred the preceding day and related to a complaint made by Longie about receiving only a single uniform during the weekly clothing exchange. (*See id.* at 10-13.)

According to Plaintiff, after Defendant Reichard's interaction with Longie, she threatened to come back and shakedown the entire unit. (Dkt. # 4-1 at 12-13.) Plaintiff asserts that

---

[1] The Defendants listed by Plaintiff in the caption of his complaint (*see* dkt. # 4-1 at 1-2) are not identical to the Defendants identified in the Defendant Information section of his complaint (*see id.* at 4-7). Plaintiff must ensure that all intended Defendants are listed in both the caption of any amended pleading and in the Defendant Information section of the pleading.

ORDER DECLINING TO SERVE COMPLAINT
AND GRANTING LEAVE TO AMEND - 2

Defendant Reichard was among the officers who returned to the unit the following day to participate in the shakedown even though she was not the assigned officer in the unit that day. (*Id*. at 13.) Plaintiff claims that when he returned to his housing unit following the shakedown, he discovered "his legal, educational, and inspirational books" were gone. (*Id*.) Plaintiff further claims that following the shakedown, Defendant Reichard stood over his books taunting him and saying, "I told y'all I was coming back to tear up y'all shit." (*Id*.)

While Plaintiff appears to attribute the alleged retaliatory search on November 6, 2023, to the dispute between Defendant Reichard and Longie the preceding day, he alleges that officers also "conspired to use the shakedown as a ruse to retaliate and punish me for filing grievances and lawsuits." (Dkt. # 4-1 at 14.) Plaintiff asserts that the day following the alleged retaliatory search, November 7, 2023, he filed a grievance regarding the officers' conduct and, as a result, there was another shakedown the morning of November 8, 2023. (*Id*.) Plaintiff claims that during this second shakedown, Defendants Williams, Edmonds, and Moen took his commissary items and poked holes in them and scattered his paperwork "allover." (*Id*. at 15.)

Plaintiff alleges in the second count of his proposed complaint that Defendants Bacon, Taylor, Nance, Curtis, and King County violated his Fourteenth Amendment rights when they failed to protect him from the unlawful conduct of Defendants Taylor, Jr. and Reichard. (*See* dkt. # 4-1 at 17-19.) Plaintiff claims that he has filed numerous grievances informing Defendants Bacon, Taylor, and Curtis that shakedowns are being used as a form of retaliation and punishment, and that he has corresponded with Defendant Nance informing him of the same thing. (*Id*. at 17.) Plaintiff asserts that these supervisory officials have failed to take any action with respect to the alleged unlawful conduct of Jail employees. (*Id*. at 18-19.)

ORDER DECLINING TO SERVE COMPLAINT
AND GRANTING LEAVE TO AMEND - 3

1    Plaintiff alleges in the third count of his proposed complaint that Defendants Joy, Miller,

2    King County, Nance, Bacon, Curtis, Taylor, and Cole violated his Fourteenth Amendment rights

3    by depriving him of sufficient cleaning supplies and thereby causing him to be confined under

4    inhumane conditions. (*See* dkt. # 4-1 at 19-23.) Plaintiff asserts that he is housed in a small open

5    dormitory unit with 18 other detainees, which has inadequate ventilation, permanent mildew in

6    the shower and bathroom, and is constantly dirty. (*Id*. at 21.) Plaintiff further asserts that there

7    have been outbreaks of body lice and respiratory infections in the unit, and that because of the

8    poor conditions, he is at high risk of contracting communicable infectious diseases. (*Id*.)

9    Plaintiff claims that he requests cleaning supplies every day for the purpose of keeping

10    the common areas of the unit clean, but that Defendants Joy, Cole, and Miller provide either

11    insufficient supplies or no supplies at all. (Dkt. # 4-1 at 22.) He further claims that he has written

12    numerous grievances about not being provided sufficient cleaning supplies and about the

13    inhumane living conditions, but these complaints have led only to retaliatory shakedowns. (*Id*. at

14    22.) Plaintiff alleges that Defendants Nance, Bacon, and Taylor "turn a blind eye, condone, or

15    fail to act" with respect to these issues and have thereby failed to protect Plaintiff from harm. (*Id*.

16    at 23.)

17    Finally, Plaintiff alleges in the fourth count of his proposed complaint that Defendant

18    Medina violated his First and Fourteenth Amendment rights when he refused to return legal

19    books to Plaintiff that were taken by Defendants Taylor and Reichard during the shakedown of

20    his housing unit. (*See* dkt. # 4-1 at 24-26.) Plaintiff asserts that Defendant Medina, a property

21    room employee, told him he would have to have someone pick up the books or they would be

22    destroyed and refused to provide Plaintiff another option when he explained that he did not have

23    anyone who could pick up his property. (*Id*. at 25.) Plaintiff suggests that Defendant Medina's

ORDER DECLINING TO SERVE COMPLAINT
AND GRANTING LEAVE TO AMEND - 4

actions may have been retaliatory for Plaintiff having filed lawsuits against the Jail and Jail officials. (*Id*.) Plaintiff claims that Defendant Medina deprived him of his property without due process of law and that Defendant Medina hindered his ability to access the courts by depriving him of his legal books. (*Id*. at 25-26.)

Plaintiff seeks relief in the form of a declaratory judgment declaring that the acts and omissions complained of violated his constitutional rights. (Dkt. # 4-1 at 27.) Plaintiff also seeks compensatory and punitive damages against the individual Defendants. (*Id*. at 27-28.) Finally, Plaintiff seeks preliminary and permanent injunctions ordering that sufficient cleaning supplies be provided, that body cameras be implemented for all security staff, and that a new search policy be implemented that prohibits shakedowns from being used as a form of retaliation and punishment. (*Id*. at 28.)

## III.    DISCUSSION

### A.    Legal Standards

Under the Prison Litigation Reform Act of 1996, the Court is required to screen complaints brought by prisoners seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court must "dismiss the complaint, or any portion of the complaint, if the complaint: (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2); *see also Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

Rule 8(a) of the Federal Rules of Civil Procedure provides that in order for a pleading to state a claim for relief it must contain a short and plain statement of the grounds for the court's jurisdiction, a short and plain statement of the claim showing that the pleader is entitled to relief,

1   and a demand for the relief sought. The statement of the claim must be sufficient to "give the

2   defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*

3   *v. Gibson*, 355 U.S. 41, 47 (1957). The factual allegations of a complaint must be "enough to

4   raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

5   555 (2007). In addition, a complaint must allege facts to state a claim for relief that is plausible

6   on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

7        In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show that:

8   (1) he suffered a violation of rights protected by the Constitution or created by federal statute;

9   and (2) the violation was proximately caused by a person acting under color of state law. *See*

10  *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is

11  satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in

12  another's affirmative act, or omitted to perform an act which he or she was legally required to do

13  that caused the deprivation complained of. *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350,

14  1355 (9th Cir. 1981) (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

15       "The inquiry into causation must be individualized and focus on the duties and

16  responsibilities of each individual defendant whose acts or omissions are alleged to have caused

17  a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). Vicarious

18  liability may not be imposed on a supervisory employee for the acts of their subordinates in an

19  action brought under § 1983. *Lemire v. California Dep't of Corrs. & Rehab.*, 726 F.3d 1062,

20  1074 (9th Cir. 2013). A supervisor may, however, be held liable under § 1983 "if he or she was

21  personally involved in the constitutional deprivation or a sufficient causal connection exists

22  between the supervisor's unlawful conduct and the constitutional violation." *Jackson* v. *City of*

23  *Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001).

A local government unit or municipality can be sued as a "person" under § 1983. *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). However, a municipality cannot be held liable under § 1983 solely because it employs a tortfeasor. *Id*. A plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal "policy" or "custom" that caused his or her injury, and must demonstrate that the municipality, through its deliberate conduct, was the "moving force" behind the injury alleged. *Bryan Cty. Comm'rs v. Brown*, 520 U.S. 397, 403-404 (1997) (citing *Monell*, 436 U.S. at 694).

**B.    Deficiencies**

Plaintiff's proposed complaint is generally deficient because it does not comply with the requirements of Rule 8(a). Plaintiff's pleading does not contain a short and plain statement of his claims, but instead contains vague and often confusing descriptions of his claims and conclusory allegations of harm. At this juncture, Plaintiff's pleading lacks sufficient clarity and factual support to state any plausible claim for relief against any of the named Defendants. The Court will address more specific deficiencies below.

*1.    Defendants*

Plaintiff identifies 17 individual Defendants in his proposed complaint, but he fails to adequately connect each of those individuals to the harm he alleges occurred. In his descriptions of his claims, Plaintiff provides lists of Defendants whom he believes engaged in unlawful conduct, but he fails to describe with specificity the actions undertaken by each individual or to explain how he believes those actions give rise to a viable constitutional claim. As noted above, the inquiry into causation must be individualized and must focus on the duties and responsibilities of each individual Defendant. *See Leer*, 844 F.2d at 633. Plaintiff's allegations

ORDER DECLINING TO SERVE COMPLAINT
AND GRANTING LEAVE TO AMEND - 7

1  are too generalized to demonstrate that each named Defendant personally participated in causing

2  him harm of federal constitutional dimension.

3      Plaintiff also identifies King County as a Defendant in his complaint. While Plaintiff

4  incorporates into his proposed complaint references to practice, custom, and/or policy at the Jail,

5  he fails to allege sufficient facts to demonstrate that King County was the moving force behind

6  any violation of his federal constitutional rights.

7          *2.    Retaliation*

8      Plaintiff asserts that various Defendants engaged in retaliatory conduct. (*See* dkt. # 4-1 at

9  8-16, 22, 25.) A First Amendment retaliation claim in the prison context has five basic elements:

10  "(1) An assertion that a state actor took some adverse action against an inmate, (2) because of,

11  (3) that prisoner's protected conduct, and that such action, (4) chilled the inmate's exercise of his

12  First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional

13  goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). To prevail on a retaliation

14  claim, "a plaintiff must show that his protected conduct was the substantial or motivating factor

15  behind the defendant's conduct." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (citation

16  and internal quotation omitted). In addition, a plaintiff "bears the burden of pleading and proving

17  the absence of legitimate correctional goals for the conduct of which he complains." *Pratt v.*

18  *Rowland,* 65 F.3d 802, 806 (9th Cir. 1995). The Court evaluates a retaliation claim in light of the

19  deference accorded prison officials. *Id.* at 807.

20      At least some of the facts alleged by Plaintiff in support of his retaliation claim pertain to

21  conduct by members of the Jail corrections staff that was undertaken in response to the actions of

22  another Jail inmate and/or conduct that was directed to detainees generally. Plaintiff is advised

23  that in order to state a viable retaliation claim, he must focus on conduct directed specifically at

ORDER DECLINING TO SERVE COMPLAINT
AND GRANTING LEAVE TO AMEND - 8

him based upon his exercise of his First Amendment rights. The Court observes as well that the facts set forth by Plaintiff in support of his retaliation claim are somewhat vague. It is not enough for Plaintiff to allege generally that Defendants retaliated against him for filing grievances and lawsuits, he must allege specific facts sufficient to meet the standard set forth above.

        3.    *Due Process*

Plaintiff appears to assert that Defendants denied him due process in violation of the Fourteenth Amendment when they subjected him to unwarranted punishment. (*See* dkt. # 4-1 at 8-16.) The Fourteenth Amendment requires that a pretrial detainee not be punished prior to an adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1971). Thus, when evaluating the constitutionality of conditions of pretrial confinement, the proper inquiry is whether those conditions amount to punishment of the detainee. *Id.*

Though the Due Process Clause protects pretrial detainees from punishment, not every disability imposed during pretrial detention constitutes "punishment" in the constitutional sense. *Bell*, 441 U.S. at 537. The test to be applied in determining whether particular restrictions and conditions imposed as a result of pretrial detention amount to punishment in the constitutional sense is whether there was an express intent to punish, or "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." *Id*. at 538 (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-169 (1963)). The Supreme Court has recognized that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Id*. at 546.

ORDER DECLINING TO SERVE COMPLAINT
AND GRANTING LEAVE TO AMEND - 9

1    The facts alleged by Plaintiff in his proposed complaint are too vague and conclusory to

2    state a viable due process claim. Plaintiff appears to claim that the unit searches undertaken by

3    Defendants constituted punishment. However, such searches are generally deemed to advance

4    the legitimate correctional goal of maintaining institutional security. If Plaintiff wishes to

5    proceed with this claim, he must allege clear and specific facts demonstrating that Defendants, in

6    conducting random searches of his housing unit, engaged in conduct that amounted to

7    unconstitutional punishment under the standard set forth above. Plaintiff must also allege facts

8    directly connecting any alleged unconstitutional punishment to one or more of the Defendants

9    named in this action.[2]

10              *4.      Conspiracy*

11    Plaintiff alleges that Defendants Reichard and Taylor conspired together to use the

12    shakedown as a ruse to retaliate against him and punish him for filing grievances. (Dkt. # 4-1 at

13    14.) To establish liability for a conspiracy in an action brought under § 1983, a plaintiff must

14    "demonstrate the existence of an agreement or meeting of the minds" to violate constitutional

15    rights. *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (quoting *Mendocino*

16    *Env'tl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999)). "Such an agreement

17    need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions

18    of the defendants." *Id.* Plaintiff has not alleged facts demonstrating the existence of any

19    agreement or meeting of the minds between Defendants Taylor and Reichard to violate his

20    constitutional rights.

21

22    [2] Plaintiff is advised that, to the extent he may intend to claim that he was threatened or verbally harassed
     by Defendant Reichard (*see* dkt. # 4-1 at 13), he has not identified a claim implicating federal
23    constitutional concerns. *See Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (verbal
     harassment and abuse is not sufficient to state a claim for relief under § 1983).

ORDER DECLINING TO SERVE COMPLAINT
AND GRANTING LEAVE TO AMEND - 10

1           5.     *Deprivation of Property*

2        Plaintiff appears to allege that various pieces of property, including books and

3  commissary items, were taken from him and/or destroyed by various Defendants. (*See* dkt. # 4-1

4  at 13-15, 24-26.) The Due Process Clause provides that no person shall be deprived of "life,

5  liberty, or property, without due process of law." U.S. Const. Amend. V. However, where a city

6  or county employee's random, unauthorized act deprives an individual of property, either

7  negligently or intentionally, the individual is relegated to his state post-deprivation process, so

8  long as the state provides an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517,

9  533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 540-41 (1981), *overruled on other grounds by*

10  *Daniels v. Williams*, 474 U.S. 327 (1986). Washington State provides a post-deprivation remedy

11  for the alleged tortious conduct of city and county employees under RCW 4.96. Thus, any claims

12  pertaining to the loss of Plaintiff's personal property are not cognizable in this action.

13           6.     *Access to Courts*

14        Plaintiff also alleges in the fourth count of his proposed complaint that Defendant

15  Medina's refusal to return his legal books hindered his ability to access the courts. (Dkt. # 4-1 at

16  26.) In *Bounds v. Smith*, 430 U.S. 817, 821 (1977), the Supreme Court acknowledged that

17  inmates have a constitutional right of meaningful access to the courts. The Supreme Court

18  subsequently made clear that in order to adequately allege a cause of action for deprivation of the

19  right of access to the courts, an inmate must demonstrate that he suffered some actual injury to

20  his right of access. *Lewis v. Casey*, 518 U.S. 343, 353-55 (1996). While Plaintiff asserts that

21  Defendant Medina hindered his right of access, he does not allege any facts demonstrating that

22  he suffered any actual injury to his right of access attributable to the conduct of Defendant

23  Medina. Plaintiff has therefore not alleged a viable access to courts claim.

ORDER DECLINING TO SERVE COMPLAINT
AND GRANTING LEAVE TO AMEND - 11

## IV.    CONCLUSION

Because of the deficiencies identified above, the Court declines to direct that Plaintiff's proposed complaint be served on Defendants. However, Plaintiff is granted leave to file an amended complaint curing the noted deficiencies within **thirty (30) days** of the date on which this Order is signed. Plaintiff must ensure that the amended complaint carries the same case number as his original complaint. If no amended complaint is timely filed, or if Plaintiff fails to correct the deficiencies identified above, the Court will recommend that this action be dismissed pursuant to 28 U.S.C. § 1915A(b) and 28 U.S.C. § 1915(e)(2)(B).

Plaintiff is advised that an amended pleading operates as a *complete* substitute for an original pleading. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (citing *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (as amended)). Thus, any amended complaint must clearly identify each intended Defendant, the constitutional claim(s) asserted against each Defendant, the specific facts which Plaintiff believes support each claim, and the specific relief requested.

The Clerk is directed to send Plaintiff the appropriate forms so that he may file an amended complaint. The Clerk is further directed to note this matter on the Court's calendar for **February 9, 2024**, for review of Plaintiff's amended complaint. Finally, the Clerk is directed to send copies of this Order to Plaintiff and to the Honorable John C. Coughenour.

DATED this 4th day of January, 2024.

MICHELLE L. PETERSON
United States Magistrate Judge