UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RAY CLARENCE ROGERS,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>L. REICHARD, *et al.*,<br><br>　　　　　　　　Defendants. | Case No. C23-1812-JCC-MLP<br><br>REPORT AND RECOMMENDATION |

## I.　INTRODUCTION

This is a civil rights action proceeding under 42 U.S.C. § 1983. Plaintiff Ray Rogers is currently confined at the King County Jail ("Jail") in Seattle, Washington, and he alleges in this action violations of his constitutional rights arising out of his confinement at the Jail. (Dkt. # 25.) This matter is now before the Court for the purpose of screening Plaintiff's second amended complaint. The Court, having now reviewed Plaintiff's most recent pleading, and the balance of the record, concludes that this action should be dismissed without prejudice as Plaintiff has failed to adequately allege any plausible claim for relief in this action.

//

//

REPORT AND RECOMMENDATION
PAGE - 1

## II. BACKGROUND

### A. Plaintiff's Original and First Amended Complaints

Plaintiff filed his original complaint on November 21, 2023, and he identified therein four causes of action alleging unconstitutional action and/or inaction by King County and seventeen Jail employees and officials. (*See* dkt. ## 1, 4-1.) Specifically, Plaintiff asserted that he was subjected to punitive and retaliatory shakedowns by corrections officers, that supervisory officials and King County failed to protect him from the unlawful conduct of the corrections officers, that he was deprived of sufficient cleaning supplies and therefore subject to inhumane conditions of confinement, and that a property room employee refused to return legal books taken during a shakedown and refused Plaintiff's request that he be allowed to send his books home through the mail. (*See* dkt. # 4-1 at 9-26.)

The Court screened Plaintiff's complaint in accordance with 28 U.S.C. § 1915A(a) and determined that Plaintiff had not adequately alleged a cause of action against any of the named Defendants. Thus, on January 4, 2024, the Court issued an Order declining to serve Plaintiff's complaint and granting him leave to file an amended complaint correcting a number of deficiencies identified therein. (Dkt. # 6.)

Plaintiff filed an amended complaint in March 2024. (*See* dkt. # 11.) Plaintiff's amended complaint identified thirteen causes of action and thirty-seven Defendants, including thirty-five Jail employees and officials, King County, and Public Health – Seattle & King County. (*See id.* at 2-3, 5-12.) Plaintiff asserted multiple claims pertaining to the alleged punitive and retaliatory shakedowns, as well as claims pertaining to his inability to mail confiscated books to his family, restrictions on his right of access to the courts, his alleged unlawful placement in restrictive

housing and the inhumane conditions therein, and the denial of his right to file a Prison Rape Elimination Act complaint. (*See id.* at 13-132.)

The Court screened Plaintiff's amended complaint in accordance with § 1915A(a) and once again determined that Plaintiff had not stated a viable claim for relief against any of the named Defendants. Thus, on April 17, 2024, the Court issued an Order declining to serve Plaintiff's amended complaint and granting him leave to file a second amended complaint. (Dkt. # 24.) In that Order, the Court identified the standards applicable to civil pleadings in general and to claims asserted under § 1983 more specifically. (*Id.* at 10-11.) The Court explained that Plaintiff's amended complaint, like his original complaint, was generally deficient because it did not comply with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure. (*Id.* at 11.) In particular, the Court noted that Plaintiff's amended complaint did not contain a short and plain statement of his claims but was instead unnecessarily long and lacked sufficient clarity and specificity to state a viable claim for relief against any of the named Defendants. (*Id.*)

The Court went on to note that Plaintiff, by way of his amended complaint, sought to add a substantial number of new claims and new defendants to this action, and that many of the proposed new claims did not arise until after he filed his original complaint. (Dkt. # 24 at 11-12.) Plaintiff was advised that he would only be permitted to bring claims directly related to those asserted in his original complaint. (*Id.* at 12.) He was further advised that any claims duplicating or relating to those before the Court in another of his pending actions, *Rogers v. King County*, No. C23-1034-DGE-GJL, would not be permitted here. (*Id.* at 12 n.2.)

Finally, the Court set out the standards applicable to the retaliation, due process, and equal protection claims asserted in the amended complaint, and explained the ways in which Plaintiff's claims were deficient in relation to those standards. (Dkt. # 24 at 13-18.) Plaintiff was

REPORT AND RECOMMENDATION
PAGE - 3

granted leave to file a second amended pleading curing the noted deficiencies and was advised that his failure to correct the deficiencies in a timely fashion would result in a recommendation that this action be dismissed. (*Id*. at 19-20.)

### B. Plaintiff's Second Amended Complaint

Plaintiff filed a second amended complaint on May 20, 2024. (Dkt. # 25.) Plaintiff sets forth therein seven claims for relief against eighteen Defendants, two of whom are identified only as Jane or John Doe. (*See id.*) The named Defendants are King County and numerous Jail employees and officials, including Officer L. Reichard, Sgt. Taylor, Jr., Sgt. Lorayne Verhelst, Sgt. Perez, Sgt. K. Williams, Director Allen Nance, Officer Edmonds, Officer J. Turner, Officer Moen, Officer Shergill, Officer Lucy, Officer Burke, Major Michael Taylor, Captain T. Craw, and property room staff member B. Medina. (*Id*. at 5-9.)

The claims asserted in the second amended complaint arise out of events that transpired between June 2023 and November 2023 while Plaintiff was confined in unit 7 South Lower C ("7S-L-C") at the Jail. (*See* dkt. # 25 at 10-59.) Unit 7S-L-C is a dormitory style unit that can house up to nineteen detainees at a time. (*See id*. at 14.) According to Plaintiff, at times relevant to this action, regular inspections of unit 7S-L-C were conducted every Sunday morning during first shift, between 8:00 a.m. and 10:00 a.m. (*Id*.) Plaintiff's claims by and large relate to unit inspections/searches, that occurred in addition to the regularly scheduled weekly inspections. The claims are detailed below.[1]

---

[1] Plaintiff sets forth seven counts in his second amended complaint. However, one of those counts, count five, relates to events that occurred in a housing unit other than 7S-L-C *after* Plaintiff filed the instant action. (*See* dkt. # 25 at 46-50.) As noted above, Plaintiff was advised in the Court's Order declining to serve his amended complaint that he would not be permitted to pursue claims in this action that were beyond the scope of his original complaint. (*See* dkt. # 24 at 12.) Plaintiff's fifth count is clearly beyond the scope of his original complaint and the count should therefore be dismissed without further discussion and without prejudice to Plaintiff asserting the claim in a future action.

REPORT AND RECOMMENDATION
PAGE - 4

   *1.    Count I*

Plaintiff asserts that upon arriving in unit 7S-L-C on June 11, 2023, he and the detainees who were transferred to that unit with him noticed the unit lacked adequate ventilation. (Dkt. # 25 at 14.) Plaintiff and his fellow detainees began filing grievances and otherwise complaining to unit staff about the problem, but they never received responses to their grievances or complaints. (*Id.* at 16-18.) Plaintiff asserts that on July 3, 2023, a search of unit 7S-L-C was conducted even though a regular weekly inspection of the unit had occurred the day before. (*Id.* at 18.) Plaintiff claims that after this search, he found his legal papers and other belongings were in disarray, and some of his commissary items were missing. (*Id.*) Plaintiff suggests that this search was conducted in retaliation for the grievances he and his fellow detainees submitted regarding the inadequate ventilation. (*See id.*)

Plaintiff asserts that following the search on July 3, 2023, he submitted a grievance against the officers involved in the search, complaining that the search was conducted for retaliatory reasons. (Dkt. # 25 at 19.) According to Plaintiff, he also submitted another grievance regarding inadequate ventilation, filed a lawsuit regarding inadequate ventilation, and filed a grievance and a lawsuit alleging misconduct by a corrections sergeant not named in this lawsuit.[2] (*Id.*) All of these events appear to have occurred during the month of July 2023.

Plaintiff asserts that on August 7, 2023, he was subjected to two inspections, the regular Sunday morning inspection during first shift, and another inspection conducted by a third shift sergeant. (Dkt. # 25 at 19.) Plaintiff claims that he was thereafter subjected to unreasonable inspections on September 18, 23, and 24, 2023, and that he filed several grievances related to

---

[2] *See Rogers v. King County*, No. C23-1034-DGE-GJL (inadequate ventilation) (filed July 10, 2023); *Rogers v. Weaver*, No. C23-1160-JCC-GJL (staff misconduct) (filed July 31, 2023).

REPORT AND RECOMMENDATION
PAGE - 5

these inspections, complaining that they constituted harassment and were conducted in retaliation for him filing grievances. (*Id*. at 20-21.) Plaintiff claims that following the September 24th search, he found his personal belongings, including his legal papers, scattered on his bunk and mixed with the belongings of other detainees. (*Id*. at 21.)

Later in September 2023, and continuing into early October 2023, Plaintiff submitted multiple grievances regarding the refusal of staff to provide sufficient cleaning supplies during an outbreak of body lice. (Dkt. # 25 at 22.) Plaintiff asserts that he was subjected to another unreasonable inspection on October 13, 2023, and that this inspection occurred two days after prior grievances complaining of unreasonable inspections had been decided. (*Id*. at 23.) Plaintiff claims that, once again, his legal papers were left scattered "all over," and that other detainees found Plaintiff's commissary mixed with their belongings. (*Id.*)

Plaintiff claims that all of the inspections/searches described above were unreasonable and were conducted for the purpose of harassing him in retaliation for him filing grievances related to inadequate ventilation and inadequate cleaning supplies in his housing unit, as well as grievances complaining of the alleged unreasonable searches. (Dkt. # 25 at 24.)

### 2. Count II

Plaintiff asserts that on November 5, 2023, there was a verbal altercation in unit 7S-L-C between one of Plaintiff's fellow detainees and a Jail officer related to the weekly clothing exchange. (Dkt. # 25 at 28.) Plaintiff claims that this altercation angered the Jail officer and that she threatened "to come back and tear up our shit." (*Id*.) The officer returned to the unit the following day, November 6, 2023, with a group of other officers and they announced they were conducting a "shakedown" and all detainees were to leave. (*Id.* at 29.) Plaintiff asserts that he returned to the unit after the shakedown to find his legal papers and belongings scattered and his

commissary missing. (*Id.*) Plaintiff also discovered that his "legal, educational, and inspirational" books were gone. (*Id*. at 30.)

According to Plaintiff, he was told his books were confiscated pursuant to a policy that permits inmates to have only five books in their possession at a time and he had more than that. (Dkt. # 25 at 35.) Plaintiff claims the November 6th search was punitive and used as a ruse to confiscate his books as a part of a continuing "campaign" of harassment in retaliation for filing grievances. (*See id*. at 32-34.) Plaintiff also claims that the confiscation of his books was discriminatory because Jail officers did not confiscate the books of a white detainee who had at least as many books as he did. (*Id.* at 35.)

3. *Count III*

Plaintiff asserts, in relation to the November 6, 2023 search, that two officers who participated in the search, and the officer who was assigned to unit 7S-L-C on the day of the search, were aware the search was being conducted for an improper purpose but failed to intervene in the wrongful conduct of those who initiated and/or authorized the search and thereby protect him from harm. (Dkt. # 25 at 38-42.) Plaintiff also complains that these individuals failed to report the alleged misconduct of their fellow officers. (*See id.*)

4. *Count IV*

Plaintiff asserts that on November 7, 2023, he submitted grievances complaining of the conduct of two individuals whom he believes instigated and/or authorized the search that occurred the preceding day, and that three other members of the Jail staff subjected him to another search the following day, November 8, 2023. (Dkt. # 25 at 43-44.) Plaintiff claims this search was conducted to harass him for filing a grievance the preceding day and not for any legitimate penological purpose (*Id*.)

### 5. Claim VI

Plaintiff asserts that following the unit searches on November 6, 2023, and November 8, 2023, he complained to the Office of the Ombuds about the unreasonable nature of the two searches, and Jail officials initiated an investigation of the searches after being notified by the Ombuds of Plaintiff's complaint. (*See* dkt. # 25 at 51-54.) According to Plaintiff, the investigating officer found no wrongdoing after conducting what Plaintiff believes was an inadequate investigation. (*Id.* at 52-53.) Plaintiff asserts that Jail officials thereafter adopted the findings of the investigating officer, thus ratifying the unconstitutional conduct of the officers involved in the searches. (*See id.* at 52-53.) Plaintiff further asserts that the Director of the facility likewise ratified the conduct of the officers involved in the alleged unreasonable searches by failing to establish policies that prohibited uniformed Jail staff members from misusing the search policy. (*Id.* at 53.)

### 6. Count VII

Plaintiff asserts that he was contacted by a member of the property room staff on November 14, 2023, and informed that he would have to have someone from outside the Jail pick-up the books that were confiscated during the November 6th search or the books would be destroyed. (Dkt. # 25 at 56.) Plaintiff suggests that he should have been allowed to retain his legal books in the boxes of legal materials he was permitted by policy. (*Id.*) He also claims he was told by the property room staff member that his legal materials should not have been taken and that she would return his legal books, but she never did. (*Id.*) In addition to his complaints that none of his books have been returned to him, Plaintiff also complains that he has been prohibited by policy from mailing his books home, and he believes the facility had an obligation to afford him that option. (*Id.* at 57.)

### III.     DISCUSSION

#### A.     Legal Standards

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court must "dismiss the complaint, or any portion of the complaint, if the complaint: (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2); *see also Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

Rule 8(a) of the Federal Rules of Civil Procedure provides that in order for a pleading to state a claim for relief it must contain a short and plain statement of the grounds for the court's jurisdiction, a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for the relief sought. The statement of the claim must be sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The factual allegations of a complaint must be "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In addition, a complaint must allege facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show that (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he or she was legally required to do

that caused the deprivation complained of. *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981) (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

"The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). Vicarious liability may not be imposed on a supervisory employee for the acts of their subordinates in an action brought under § 1983. *Lemire v. California Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013). A supervisor may, however, be held liable under § 1983 "if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Jackson* v. *City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001).

A local government unit or municipality can be sued as a "person" under § 1983. *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). However, a municipality cannot be held liable under § 1983 solely because it employs a tortfeasor. *Id*. A plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal "policy" or "custom" that caused his or her injury, and must demonstrate that the municipality, through its deliberate conduct, was the "moving force" behind the injury alleged. *Bryan Cty. Comm'rs v. Brown*, 520 U.S. 397, 403-404 (1997) (citing *Monell*, 436 U.S. at 694).

**B.     Analysis**

*1.     Retaliation*

Plaintiff alleges in the first, second, and fourth counts of his second amended complaint that various Defendants participated in unreasonable inspections/searches of his housing unit,

7S-L-C, in retaliation for Plaintiff filing grievances relating to the conditions of his confinement and to prior inspections. (*See* dkt. # 25 at 10-38, 43-45.)

A First Amendment retaliation claim in the prison context has five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate, (2) because of, (3) that prisoner's protected conduct, and that such action, (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). To prevail on a retaliation claim, "a plaintiff must show that his protected conduct was the substantial or motivating factor behind the defendant's conduct." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (citation and internal quotation omitted). In addition, a plaintiff "bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." *Pratt v. Rowland,* 65 F.3d 802, 806 (9th Cir. 1995). The Court evaluates a retaliation claim in light of the deference accorded prison officials. *Id.* at 807. None of Plaintiff's retaliation claims meet this standard.

Plaintiff's first count relates to the searches conducted between July 3, 2023, and October 13, 2023. (Dkt. # 25 at 10-25.) Plaintiff claims that the inspections/searches described in this count were "additional unreasonable inspections that occurred separately and/or in addition to" the scheduled weekly inspections, and he asserts that they were conducted for the purpose of harassing him in retaliation for filing grievances regarding staff misconduct and unconstitutional conditions of confinement. (*Id.* at 24.)

The Court first observes that Plaintiff appears to be of the belief that any inspection that was not a part of the Jail's regular weekly inspection schedule was necessarily unreasonable and therefore unconstitutional. This position is untenable. Indeed, the Supreme Court has recognized

REPORT AND RECOMMENDATION
PAGE - 11

that "wholly random searches are essential to the effective security of penal institutions." *Hudson v. Palmer*, 468 U.S. 517, 529 (1984). Thus, the mere fact that random searches were conducted in addition to the regular weekly inspections does not, by itself, implicate constitutional concerns. This observation does not, of course, resolve the question of whether the random searches complained of here were, as Plaintiff alleges, retaliatory in nature.

As explained above, a viable retaliation claim requires a showing that Plaintiff's protected conduct was the "substantial or motivating factor" behind each individual Defendant's conduct, *Brodheim*, 584 F.3d at 1271, and that there was an "absence of legitimate correctional goals" for that conduct. *Pratt,* 65 F.3d at 806. Plaintiff has not alleged facts which support a reasonable inference that the named Defendants, in conducting periodic random searches of a dormitory style unit that housed over a dozen detainees, did so in response to Plaintiff's frequent submission of grievances or to his filing of lawsuits. Plaintiff makes clear in his pleading that other detainees in the same housing unit also filed grievances and otherwise complained of the conditions of confinement in unit 7S-L-C. (*See* dkt. # 25 at 16-18.) Moreover, the number of searches at issue – six in total over a four-month period – does not seem excessive in the jail context and does not give rise to an inference that Plaintiff's exercise of his First Amendment rights was the motivating factor behind the searches. Plaintiff therefore fails to state a plausible retaliation claim in count one of his second amended complaint.

Plaintiff's second count relates to the unit search conducted on November 6, 2023. (*See* dkt. # 25 at 28-29.) While Plaintiff presents this claim as one alleging primarily a violation of his right to due process (*see id.* at 26-27), he includes in the body of his claim allegations that Defendants acted in a retaliatory manner in searching his belongings (*see id.* at 26, 31-32, 34-35). However, the facts alleged in count two, when viewed in their entirety, demonstrate that the

REPORT AND RECOMMENDATION
PAGE - 12

search was prompted by a confrontation between a member of the Jail corrections staff and another detainee in unit 7S-L-C the day prior to the search. (*See id.* at 28-29.)

While Plaintiff suggests that he was the target of the search (dkt. # 25 at 30), he also claims the officer who initiated the search "wanted to retaliate against the entire unit for her interaction with a single detainee whom had already been disciplined" (*id.* at 31). Plaintiff goes on to assert that if the detainee who was engaged in the confrontation with the officer had been provided the clothing he was entitled to under DAJD policy, the shakedown would not have occurred because the detainee would not have become upset and "caused" the officer to retaliate. (*Id.* at 32.) It cannot reasonably be inferred from the totality of the allegations contained in count two that Plaintiff's protected conduct was the motivating factor behind the search on November 6, 2023. Plaintiff therefore fails to state a plausible retaliation claim in count two.

Plaintiff's fourth count arises out of the search conducted on November 8, 2023. (*See* dkt. # 25 at 43-44.) Plaintiff claims this search was conducted in retaliation for grievances he submitted on November 7, 2023, complaining about the conduct of the officer who initiated the search on November 6, 2023, and the supervisor who authorized it. (*Id.* at 44.) However, while the two searches were conducted close in time, the three Defendants named in count four were apparently not involved in the search on November 6th, and Plaintiff alleges no facts connecting the two individuals who were the subject of his grievances concerning the November 6th search and the three Defendants alleged to have been involved in the November 8th search. Plaintiff once again fails to show that his grievances were the motivating factor behind the challenged search and, thus, he fails to state a plausible retaliation claim in count four.

//

//

REPORT AND RECOMMENDATION
PAGE - 13

    2.    *Substantive Due Process*

Plaintiff alleges in counts two, three, six, and seven of his second amended complaint that various Defendants engaged in conduct that violated his right to substantive due process in relation to the searches conducted on November 6, 2023, and November 8, 2023. (*See* dkt. # 25 at 26-42, 51-54.)

The Due Process Clause of the Fourteenth Amendment confers both procedural and substantive rights. The substantive component of the Due Process Clause protects individuals from the arbitrary deprivation of their liberty by government. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845-49 (1998). However, "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Id*. at 846 (citing *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992)). The Supreme Court has identified the cognizable level of executive abuse of power as "that which shocks the conscience." *Id*. The Supreme Court has also made clear that "the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials." *Davidson v. Cannon*, 474 U.S. 344, 348 (1986). This is so even if the lack of due care resulted in serious injury. *See id*. at 347-48.

Plaintiff's second count pertains only to the November 6th search and Plaintiff alleges therein that the search violated his substantive due process rights because it amounted to punishment imposed upon him for the actions of another detainee. (*See* dkt. # 25 at 26-27, 33.) However, Plaintiff fails to allege facts demonstrating that the search of his housing unit on November 6th constitutes the type of egregious official conduct necessary to give rise to a substantive due process claim. Searches in the correctional environment are commonplace and are generally deemed to advance the legitimate correctional goal of maintaining institutional security. *See Bell v. Wolfish*, 441 U.S. 520, 546 (1971) ("[M]aintaining institutional security and

REPORT AND RECOMMENDATION
PAGE - 14

preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees.") Though Plaintiff believes the November 6th search was improper, he has not alleged facts demonstrating that it violated constitutional norms. Plaintiff therefore fails to state a plausible substantive due process claim in count two.

Plaintiff's third count pertains only to the November 6th search and his sixth count pertains to both of the November searches. (*See* dkt. # 25 at 38-42, 51-54.) Specifically, Plaintiff alleges in count three that three Jail officers who either participated in, or were present for, the search on November 6th, had a duty to intervene and protect him from the harm caused by the unreasonable search and/or to report the wrongful acts of their fellow officers. (Dkt. # 25 at 40-41.) Plaintiff alleges in count six that Jail officials ratified the unconstitutional conduct of officers involved in the two November 2023 searches when they found there was no wrongful conduct by officers involved in the searches after conducting an inadequate investigation, and when the Director of the Jail failed to implement policies prohibiting misuse of the existing search policy. (*See id.* at 52-54.) These two claims are premised on the underlying claims that the challenged searches violated Plaintiff's substantive due process rights and/or were retaliatory in nature. As explained above, Plaintiff has not stated any plausible constitutional claim related to the November 2023 searches. Absent a plausible claim that the searches were constitutionally infirm, Plaintiff's related claims necessarily fail.

Plaintiff's seventh count pertains to the books confiscated during the November 6th search of unit 7S-L-C. (*See* dkt. # 25 at 55-58.) Specifically, Plaintiff alleges that the Jail property room staff enforced a punitive policy that denies prisoners who are merely visitors to the State of Washington the opportunity to mail excess property out of the facility (*id.* at 56), and

REPORT AND RECOMMENDATION
PAGE - 15

that the Director of the facility failed to establish a policy that would have provided him an option to mail his books home (*id*. at 57). However, the failure of the Jail or the Jail staff to provide Plaintiff his preferred option for disposing of excess property does not constitute the type of egregious official conduct necessary to give rise to a substantive due process claim. The Court observes as well that Plaintiff does not allege that he made the Director of the Jail aware of the deficiencies he perceived to exist in the policy concerning disposition of property, nor does he demonstrate that a policy which precludes detainees from mailing excess property out of the facility implicates constitutional concerns. For these reasons, Plaintiff fails to state a plausible substantive due process claim in count seven.

      3.     *Procedural Due Process*

Plaintiff alleges in counts two and seven of his second amended complaint that the confiscation of his books during the search on November 6, 2023, violated his procedural due process rights. (*See* dkt. # 25 at 35-36, 57-58.)

The Due Process Clause protects prisoners from being deprived of property without due process of law. *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974) (citations omitted). However, a due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). A prisoner must show the existence of a property interest that is protected by state law in order to obtain protection under the Due Process Clause of the Fourteenth Amendment. *See id*. at 577 (Property interests are not created by the Constitution, instead "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."). To assert such an interest, there must be a "legitimate claim of entitlement to it." *Id*.

In addition, only an authorized, intentional deprivation of property is actionable under the Due Process Clause. *Hudson*, 468 U.S. at 533. An authorized deprivation occurs pursuant to "state law, regulation, or institutionalized practice," and the normal pre-deprivation hearing is required to satisfy due process. *Haygood v. Younger,* 769 F.2d 1350, 1357 (9th Cir. 1985) (en banc), *cert. denied,* 478 U.S. 1020 (1986) (citing *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 436 (1982)). An unauthorized intentional deprivation of property by a state employee does not constitute a Fourteenth Amendment violation if a meaningful post-deprivation remedy for the loss is available under state law. *Hudson,* 468 U.S. at 534.

Plaintiff asserts that he has an actionable due process claim arising out of the confiscation of his books because he was told the books were confiscated pursuant to a policy that permitted him to have only five books in his possession at a time. (*See* dkt. # 25 at 35-36; *see also id.* at 57-58.) If, as Plaintiff asserts, *all* of his books were confiscated, it appears his claim involves both authorized and unauthorized deprivations and, thus, only a portion of his claim may be actionable. However, leaving that issue aside, and assuming Plaintiff had a property interest in some or all of the books that were confiscated, Plaintiff's allegations suggest that he was advised of the reason the books were confiscated and he was provided an option for disposing of the books, albeit not his preferred option. Plaintiff does not identify what other process he believes he was due under the circumstances.

The Court also observes that it is unclear from Plaintiff's pleading whether his books have, at this juncture, been disposed of or whether they remain in his property in the property room at the Jail. Thus, the scope of any injury Plaintiff may have suffered in relation to the confiscated books is also unclear. Given the lack of clarity in Plaintiff's procedural due process claim and given that Plaintiff's allegations suggest he has likely been afforded whatever process

may have been due him in relation to the confiscated books, he has not stated plausible procedural due process claims in his second and seventh counts.[3]

## IV. CONCLUSION

Based on the foregoing, this Court recommends that Plaintiff's second amended complaint and this action be dismissed, without prejudice, pursuant to 28 U.S.C. § 1915A(b) and 28 U.S.C. § 1915(e)(2)(B). A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit not later than **fourteen (14) days** from the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar **fourteen (14) days** from the date they are filed. Responses to objections may be filed by **the day before the noting date**. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **August 9, 2024**.

DATED this 19th day of July, 2024.

MICHELLE L. PETERSON
United States Magistrate Judge

---

[3] Plaintiff includes in the second count of his second amended complaint an allegation that the officers who confiscated his books discriminated against him because they did not confiscate the books of a white detainee. (*See* dkt. # 25 at 35.) While this allegation arguably implicates Plaintiff's rights under the Equal Protection Clause, Plaintiff does not specifically allege an equal protection claim in his pleading and the conclusory nature of the allegation is insufficient to state a plausible equal protection claim against the Defendants who confiscated his books.

REPORT AND RECOMMENDATION
PAGE - 18